UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SCOTT ALLEN DIETER,

                                    Petitioner,

        v.

PERRY RUSSELL,[1] *et al.*,

                                    Respondents.

Case No. 3:21-cv-00241-MMD-CSD

ORDER

## I.    SUMMARY

Petitioner Scott Allen Dieter was sentenced in Nevada state court to 8 to 20 years after pleading guilty to possession of a firearm by a prohibited person and being adjudged a habitual criminal. (ECF No. 16-10.) This matter is before this Court for adjudication of the merits of the remaining grounds[2] in Dieter's *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254, which alleges various grounds of ineffective assistance of counsel and judicial misconduct. (ECF No. 7 ("Petition").) For the reasons discussed below, this Court denies the Petition and a certificate of appealability.

///

///

///

///

---

[1]The inmate locator page on the state corrections department's website indicates that Dieter is on residential confinement. Should there be any further proceedings in this federal matter, the parties should substitute a proper current respondent in the place of Dieter's former physical custodian.

[2]This Court previously dismissed ground 3. (ECF No. 27 at 4.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    BACKGROUND

### A.    Factual background[3]

On June 9, 2016, Detectives with the Reno Police Department Repeat Offender Program surveilled Dieter and observed him entering a firearms store and picking up 6 firearms. (ECF No. 20-2 at 8.) The investigation also revealed that Dieter was not residing at the residence on file with the Reno Police Department. (*Id.*) Detectives arrested Dieter and went to his residence with a drug-sniffing dog, who alerted from the outside of the residence to the presence of drugs. (*Id.*) Detectives obtained a search warrant for Dieter's residence and found "several bags containing a combined 160.48 grams gross weight of green leafy substance, numerous small zip baggies and a pocket scale." (*Id.*) Detectives also found a stolen motorcycle on Dieter's property. (*Id.*) When interviewed, Dieter admitted selling marijuana. (*Id.*)

### B.    Procedural background

Dieter was charged with possession of a firearm by a prohibited person and being a habitual criminal. (ECF No. 15-16.) Dieter entered a guilty plea to possession of a firearm by a prohibited person. (ECF No. 15-19.) As a part of the plea agreement, the parties were free to argue regarding the imposition of habitual criminal status, the prosecution agreed to dismiss charges in a different case (case number RCR2016-086285), Dieter agreed to plead guilty to domestic battery in another case (case number RCR2016-086286), and the prosecution agreed to recommend a concurrent sentence in the latter case (case number RCR2016-086286). Dieter was adjudged a habitual criminal and sentenced to 8 to 20 years. (ECF No. 16-10.)

Dieter appealed his judgment of conviction, and the Nevada Court of Appeals affirmed on February 14, 2018. (ECF No. 17-2.) Dieter filed a petition for review, but the

---

[3]This Court makes no credibility or other factual findings regarding the truth or falsity of this evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the Petition. Any absence of mention of a specific piece of evidence does not signify this Court overlooked it in considering Dieter's claims.

Nevada Supreme Court denied his petition. (ECF Nos. 17-5, 17-6.) Dieter filed a *pro se* petition for post-conviction relief, a counseled supplemental petition, and a counseled second supplemental petition in state court. (ECF Nos. 17-8, 17-12, 17-21.) The state court denied post-conviction relief, and Dieter appealed. (ECF Nos. 17-26, 18-1.) The Nevada Court of Appeals affirmed. (ECF No. 18-17.)

Dieter then filed this Petition. (ECF No. 7.) Respondents moved to dismiss, and this Court granted the motion, in part, dismissing ground 3 of the Petition at Dieter's request. (ECF Nos. 14, 27.) The Petition is before the Court for a review on the merits of the remaining two grounds. (ECF Nos. 30 (Respondents' answer, 35 (Dieter's reply).)

## III.   GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**IV.   DISCUSSION**

**A.   Ground 1—ineffective assistance of counsel**

In ground 1, Dieter alleges various instances of ineffective assistance of counsel in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (ECF No. 7 at 3.) Specifically, Dieter alleges the following: (a) counsel failed to secure testimony from Major Fowler of the Salvation Army at the sentencing hearing; (b) counsel failed to introduce additional information regarding the toy guns found at his residence; (c) counsel failure to explain the underlying reasons behind the plea agreement to the state court; (d) counsel failed to object to the misstatements of fact at the sentencing hearing; and (e) counsel failed to file a motion for continuance of the sentencing hearing to allow him to complete the Salvation Army drug treatment program prior to being sentenced. (*Id.*)

///

### 1.    Background information

In the sentencing memorandum filed before the sentencing hearing, Dieter's counsel argued against the imposition of habitual criminal status because Dieter's prior convictions were old and non-violent. (ECF No. 15-26 at 6.) Additionally, Dieter's counsel presented the following arguments in mitigation: (1) Dieter did not know that simply picking up a firearm in a store amounted to possessing a firearm; (2) Dieter had held good jobs; (3) Dieter's family was supportive; (4) Dieter had suffered lots of trauma in the last few years, including the death of his girlfriend; and (5) Dieter was a severe drug addict. (*Id.* at 6-7.) Dieter's counsel included letters from the Operative Plasterers & Cement Masons union where Dieter was employed and a letter from Dieter's parents. (*Id.* at 12-15.) It appears that Dieter's counsel also filed a substance abuse evaluation. (*See* ECF No. 15-28 at 8.)

On October 6, 2016, at Dieter's initial sentencing hearing, the state court admitted Dieter's 4 prior judgments of conviction. (ECF No. 15-28 at 21-22; *see also* ECF No. 15-27.) Dieter made, *inter alia*, the following comments during his allocution: (1) his girlfriend who died, Lisa Anglin, was not a drug user; (2) he came back from work one day and found Anglin with "blood coming out of her nose, her mouth, her eyes, her ears[;]" (3) the coroner told him that Anglin died of an aneurysm; (4) Dieter, who had been clean up until that point, started using controlled substances again following Anglin's death; and (5) "[t]here was a cable through the triggers" of the firearms at the store, meaning they were inoperable. (ECF No. 15-28 at 16-17, 23.) Following the parties' arguments, the state court stated, "I don't find it to be just and proper to declare Mr. Dieter an habitual offender at this juncture." (*Id.* at 26.) The state court then stated,

> I'm not going to give you a sentence today. I'm going to do something very weird, . . . [a]nd if you don't want to do it, I'll give you the prison term.
> . . . .
> I'm going to order release own recognizance for direct transport to either the Reno Gospel Mission or Salvation Army. Now, if you don't like either of those, then let's just do the prison thing today and today we are done.
> What do you think?

1  (*Id.* at 28-29.) Dieter responded that he was willing to do the Salvation Army program and
2  had been already accepted. (*Id.* at 29.) The state court then stated, "[i]f you screw it up,
3  Mr. Dieter, seven to 20, boom boom." (*Id.* at 30.) The state court continued the sentencing
4  hearing to January. (*Id.* at 33.)

5  On January 24, 2017, at Dieter's continued sentencing hearing, Dieter's counsel
6  informed the state court that he was still in the Salvation Army program and was set to
7  graduate on April 19, 2017. (ECF No. 16-1 at 5-8.) The state court stated that it expected
8  that "we would have some information from Salvation Army" rather than just information
9  from Dieter. (*Id.* at 6.) Dieter's counsel stated that "if the Court wishes to get information
10  from Salvation Army, . . . [she] would ask to put this over briefly." (*Id.* at 7.) The state court
11  then stated that it had a report from court services that "Mr. Dieter was released to
12  Salvation Army" and "is currently compliant with the program and participating." (*Id.* at 8.)
13  The state court then allowed the hearing to continue. (*Id.*)

14  The prosecutor noted that (1) the "four certified copies [of Dieter's convictions that
15  were previously admitted] represent[ed] 10 felony convictions," and (2) under the plea
16  bargain, the prosecution dismissed charges of possession of a controlled substance for
17  sale, possession of methamphetamine, possession of cocaine, possession of several
18  drugs without a prescription, and possession of a stolen vehicle. (*Id.* at 13-14.) The
19  prosecution then called Detective Matthew Petersen who testified, *inter alia*, that (1) the
20  coroner's report indicated that Anglin's cause of death was "acute intoxication from
21  diazepam, nordiazepam, morphine and methamphetamine," (2) the coroner's report
22  included a physical appearance description of Anglin but it did not state that she was
23  covered in blood, and (3) Dieter "indicated to the coroner investigator that [he and Anglin]
24  had been partying and drinking up until about 4:00 a.m." (ECF No. 16-1 at 16-18.) And
25  regarding Dieter's crime, Detective Petersen testified, *inter alia*, that (1) the firearms at
26  the store Dieter visited were not, "nor have they ever been, secured by [a] cable," and (2)
27  during the search of Dieter's residence following his arrest, officers found "four air

28

1   pistol/BB gun/pellet gun handguns, very realistic looking air guns," and "two long-arm air

2   guns," none of which "were cartridge firearms." (*Id.* at 19, 24-25.)

3          During Detective Petersen's testimony, the prosecution admitted two photographs

4   from surveillance cameras at the store Dieter visited which showed Dieter manipulating

5   a handgun and a rifle. (*Id.* at 21-24.) Dieter's counsel did not object to the admission of

6   either photograph. (*Id.* at 22, 24.) The prosecution also admitted three photographs taken

7   during the search of Dieter's residence: one showing a drawer with four air pistols in it,

8   one of an air rifle, and one of a different air rifle with a scope on top. (*Id.* at 25-26.) Dieter's

9   counsel also did not object to the admission of these photographs. (*Id.* at 26.)

10          During Dieter's counsel's cross-examination of Detective Petersen, the following

11   colloquy occurred:

12          Q.    With regard to the guns in his apartment, those were air guns?
            A.    That is correct.
13          Q.    What are air guns?
            A.    Simulated - - they are firearms that look - - they give the appearance
14                of cartridge firearms, but their propulsion is by means of air versus
                  explosion of the cartridge charge.
15          Q.    Okay. So they are, essentially, not weapons that could be used to kill
                  someone; is that correct?
16          A.    That is incorrect. I know in this jurisdiction an air gun killing a subject
                  in downtown Reno.
17          . . . .
            Q.    So just to clarify, all of the weapons - - all of the guns were air guns,
18                there were no other kinds of guns, correct, in his house?
            A.    In his home, no cartridge firearms were found. They were all air guns.
19

20   (*Id.* at 33-35.)

21          Following Detective Petersen's testimony and the prosecution's argument, the

22   state court questioned the prosecutor about the charges that were originally filed against

23   Dieter. (*Id.* at 43.) The state court asked why the prosecution dismissed 18 felonies in

24   exchange for Dieter's guilty plea in the instant case, and the prosecutor responded, Dieter

25   "may have been arrested for 18 felonies, but he wasn't charged." (*Id.* at 46.)

26          Following the parties' arguments, the state court gave its sentence:

27          [B]ased upon all of the information provided by the Court, the Court
            finds that it is just and proper to adjudicate him as a habitual offender, as
28          the Court has been provided with substantially more information, Mr. Dieter.

1
2

And one of the big issues that you represented to the Court is that you had been clean, but you had been doing pretty well, and I acknowledged that. And you had been working, but that you -- when you found your girlfriend dead in your bed, that that's what triggered this horrific relapse.

3
4

But, of course, [the prosecutor] did not advise the Court that you had all of these guns already. There was no purpose for you to be handling guns.

5

Nor did [the prosecutor] articulate that you had 18 felony charges that were all dismissed in exchange for this, or give a thorough explanation.

6
7

But I commend you for the work that you've done. But I do find that it is just and proper to adjudicate you as a habitual criminal, and you are sentenced -- and the Court has considered the primary offense.

8

And you have some violence in your criminal history, but you -- you have a very, very lengthy criminal history as it relates to theft and manipulation.

9
10

You have 10 prior felony convictions that have been certified and provided by the Court, that the Court's concern is that you continue to engage in this criminal behavior.

11
12

And to have all of these weapons, all of these drugs, I don't really quite understand why the State chose to charge this as they did.

13

But previously, the Court was left with the impression that you were merely in there looking at a BB gun. And the State failed to advise the Court that you already had six guns, that you had carloads of drugs, that there was no reason for you to be in that store, Mr. Dieter.

You are a knowledgeable felon. You know what the rules are.

14
15

And I was persuaded, since I am not a gun person, that you were merely -- I didn't have any of these pictures. I have no idea why we didn't have this information. But that's not information you shared with the Court.

16   (*Id.* at 47-49.) The state court adjudicated Dieter a habitual criminal and revoked his

17   release; however, before the sentence could be finalized, Dieter fainted. (*Id.* at 50-52.)

18   Due to Dieter's medical emergency, the sentencing hearing was continued to February

19   7, 2017. (*Id.* at 51.)

20   Before that hearing, Dieter's counsel filed another letter from Dieter's parents, a

21   letter from Dieter, and a motion to continue the sentencing hearing for 90 days so that

22   Dieter's "elderly parents could be present." (ECF Nos. 16-3, 16-4, 16-5 at 4.) In the motion

23   to continue, Dieter's counsel "also request[ed] that the Court hear from Major Shari

24   Fowler, who will be present on February 7, 2017, and could provide the Court with

25   evidence of how well Mr. Dieter was doing in the Salvation Army Program for the three

26   months he was there." (ECF No. 16-5 at 4.) In denying the motion for a continuance, the

27   state court stated: "The sentencing hearing has been concluded and the only matter

28

1    remaining is the pronouncement of sentence. The hearing will not be re-opened, nor will
2    it be continued." (ECF No. 16-8 at 3.)

3        At the continued hearing, Dieter's counsel stated that she had "Major Fowler here
4    from the Salvation Army who would indicate to the Court that there were no issues with
5    Mr. Dieter and he was progressing nicely." (ECF No. 16-9 at 5.) Dieter's counsel then
6    argued that "the Court sent him to Salvation Army in October" and told Dieter that "if he
7    didn't do well and if he essentially messed up, the Court would then consider habitual
8    offender." (*Id.*) However, because Dieter "did nothing wrong at Salvation Army," Dieter's
9    counsel argued that it was not necessary for the state court "to turn around and then
10   decide to sentence him to habitual criminal." (*Id.*)

11       The state court responded that it had "made no promises" to Dieter at the October
12   sentencing hearing and then explained its basis for adjudging Dieter a habitual criminal:
13   "[t]here was substantial information that was not brought to the attention of the Court at
14   the first sentencing." (*Id.* at 5-6.) The state court elaborated: "[t]he information provided
15   at the first sentencing was woefully inadequate, and when I asked questions at the first
16   sentencing, I was not given complete answers." (*Id.* at 6.) The state court then stated that
17   the case was "not just a matter of Mr. Dieter looking at a gun, . . . [i]t's a matter that Mr.
18   Dieter already had five or six guns in his possession." (*Id.* at 7.) Dieter's counsel informed
19   the state court that "[t]hey were BB guns," to which the state court indicated, "I don't care
20   what they were." (*Id.*) Thereafter, the state court made the following findings of fact and
21   conclusions of law:

22           [T]he Court has considered the criminal history of Mr. Dieter, which
23       includes 13 convictions, 10 felony convictions, the nature of the those
         convictions.
24           The Court finds that in this particular case he was initially charged
         with 18 felony convictions and many were plea bargained or dismissed to
25       the one charge, which is possession of a firearm by a prohibited person.
             The Court makes an individualized determination that it is just and
26       proper to adjudicate the defendant as a habitual criminal based upon his
         extensive criminal history.
27           The Court exercises its broad discretion to find that his prior
         convictions are not trivial or remote and they relate to both crimes of
28       violence and crimes of drug possession and weapons involvement.

The State has proven the prior convictions beyond a reasonable doubt[.]

. . . .

I will weigh the appropriate facts in this case for and against the finding of habitual criminality. I have considered the fact that Mr. Dieter did do three months at the Salvation Army, and I commend him for that.

I find that because of the global circumstances of this case and the fact that Mr. Dieter, he alleges that he was merely in a store and happened to be looking at guns, that there was really no bad intent there, and obviously, because I do not understand or engage in gun use, the Court initially felt that this was somebody just walking around in a store who just happened to be in a store that had guns.

[The prosecutor] did not come to the first sentencing, but clarified in an extensive actual sentencing hearing, because we continued the sentencing to allow Mr. Dieter to do some drug treatment, that the circumstances of the case were substantially different than those represented in the Presentence Investigation Report or the lack of information provided by [the prior prosecutor].

As such, the Court finds that the gravity of his prior convictions, coupled with the fact that although he apparently, under the law, is allowed to have BB guns, he already had multiple guns in his possession.

Additionally, it's represented that he had been clean and sober, but that the tragic loss of his girlfriend led him to relapse. But at the time of this arrest, there were drugs involved and substantially other information suggesting that he had been using on an ongoing basis for a period of time.

Nonetheless, I think it's excellent that he did some drug treatment and I'm hopeful that he continues that drug treatment.

(*Id.* at 8-11.) Dieter was sentenced to 8 to 20 years. (*Id.* at 12.)

## 2.      Standard for ineffective assistance of counsel

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate: (1) that counsel's "representation fell below an objective standard of reasonableness[;]" and (2) that counsel's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable

effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 3.    Ground 1(a)—testimony of Major Fowler

#### a.    State court determination

In affirming the state court's dismissal of Dieter's state post-conviction petition, the Nevada Court of Appeals held:

> Dieter claimed counsel was ineffective for failing to . . . present testimony at the sentencing hearing regarding Dieter's progress at the treatment center . . . [T]he sentencing court acknowledged that Dieter was compliant with his treatment program at sentencing and commended Dieter's progress. The sentencing court's decision to sentence Dieter to prison rather than to place him on probation and allow him to continue his treatment program was based on the fact that Dieter lied to the sentencing court at the previous sentencing hearing. Therefore, Dieter failed to demonstrate a reasonable probability of a different outcome had counsel presented testimony regarding his progress. Accordingly, we conclude the district court did not err by dismissing this claim without first conducting an evidentiary hearing.

(ECF No. 18-17 at 3.)

#### b.    Analysis

Dieter argues that counsel was deficient for not ensuring the state court had the fullest information possible regarding his participating in the Salvation Army program

before the state court sentencing him. (ECF No. 7 at 22.) While Dieter's counsel *may* have been deficient for not presenting evidence at the continued sentencing hearing in January regarding Dieter's progress at the Salvation Army program, especially since the state court continued the original sentencing hearing to allow Dieter to go into the program and appeared to expect a status report at the continued sentencing hearing, the Nevada Court of Appeals reasonably determined that Dieter failed to demonstrate prejudice. *See Strickland*, 466 U.S. at 694. Indeed, as the Nevada Court of Appeals reasonably noted, at the beginning of the continued sentencing hearing on January 24, 2017, the state court noted that it had a report from court services that "Dieter was released to Salvation Army" and was "currently compliant with the program and participating." (ECF No. 16-1 at 8.) And during the state court's explanation of Dieter's sentence at the end of the hearing, the state court "commend[ed Dieter] for the work that [he had] done." (*Id.* at 48.) As such, the state court had favorable information regarding Dieter's Salvation Army program participation and considered that mitigating information in fashioning Dieter's sentence. Dieter fails to articulate what further beneficial information could have been provided by Major Fowler regarding Dieter's three months at the Salvation Army program or how that further information would have changed his sentence. *See United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (denying an ineffective assistance of counsel claim based on counsel's refusal to call witnesses because the defendant "offers no indication of . . . how their testimony might have changed the outcome of the hearing").

Additionally, as the Nevada Court of Appeals also reasonably noted, the state court did not adjudge Dieter a habitual criminal at the continued sentencing hearing due to his actions—good or bad—relating to the Salvation Army program. Rather, the state court adjudged Dieter a habitual criminal at the continued sentencing hearing because it heard new information from the prosecution that was not presented at the original sentencing hearing: Dieter had been arrested for many other felonies; Dieter had fabricated information at the original sentencing hearing regarding Anglin's death, his substance

1   abuse, and the circumstances of his possession of a firearm at the store; and Dieter was

2   found to be in possession of many air guns during his arrest.

3         Therefore, the Nevada Court of Appeals' determination that Dieter failed to

4   demonstrate a reasonable probability of a different outcome at his sentencing hearing

5   had counsel presented the testimony of Major Fowler regarding his progress at the

6   Salvation Army program constitutes an objectively reasonable application of *Strickland*'s

7   prejudice prong. *See Strickland*, 466 U.S. at 694. Dieter is not entitled to federal habeas

8   relief for ground 1(a).

9                     **4.      Ground 1(b)—information about toy guns**

10                          **a.      State court determination**

11        In affirming the state court's dismissal of Dieter's state post-conviction petition, the

12  Nevada Court of Appeals held:

13        Dieter claimed counsel was ineffective for failing to inform the sentencing
          court that the guns found in his home were "toy guns." At the second
14        sentencing hearing, the sentencing court was informed that Dieter had
          several air guns in his home and that these were not prohibited guns.
15        Further, the sentencing court acknowledged that Dieter was allowed to
          possess this type of gun. Therefore, Dieter failed to demonstrate counsel
16        was deficient or a reasonable probability of a different outcome had counsel
          presented further information regarding the guns. Accordingly, we conclude
17        the district court did not err by dismissing this claim without first conducting
          an evidentiary hearing.
18

19  (ECF No. 18-17 at 3-4.)

20                          **b.      Analysis**

21        Dieter argues that counsel was deficient for not providing any information to the

22  state court that the guns found at his residence during the search were toy guns.[4] (ECF

23  No. 7 at 24.) Dieter argues that counsel could have presented the report from Detective

24  McNeely which stated that "no prohibited firearms were found in [his] room."[5] (*Id.*)

25        _____

26        [4]Dieter's argument that the guns found in his residence were merely "toy guns"
    appears to be a misnomer since Detective Petersen testified that air guns have been
    known to kill. (ECF No. 16-1 at 34.)

27

28        [5]Relatedly, Dieter also argues that counsel failed to object to the prosecution
    presenting photographs of the toy guns found at his residence. (ECF No. 7 at 31.) Nevada

1      The Nevada Court of Appeals reasonably determined that Dieter failed to

2 demonstrate that counsel acted deficiently. *Strickland*, 466 U.S. at 688. As the Nevada

3 Court of Appeals reasonably noted, the state court knew that the guns found during the

4 search were not prohibited guns because at the January 24, 2017, sentencing hearing,

5 Detective Petersen testified that officers found "four air pistol/BB gun/pellet gun

6 handguns" and "two long-arm air guns," none of which "were cartridge firearms." (ECF

7 No. 16-1 at 24-25.) Additionally, at the February 7, 2017, sentencing hearing, Dieter's

8 counsel clarified that the guns found "were BB guns." (ECF No. 16-9 at 7.) Dieter fails to

9 articulate what further information counsel should have presented to the state court

10 regarding these guns. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (denying

11 habeas relief because the petitioner's "conclusory allegations did not meet the specificity

12 requirement"); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations

13 which are not supported by a statement of specific facts do not warrant habeas relief.").

14      Further, the Nevada Court of Appeals reasonably determined that Dieter failed to

15 demonstrate prejudice. *See Strickland*, 466 U.S. at 694. As the Nevada Court of Appeals

16 reasonably noted, the state court acknowledged that Dieter was allowed to possess the

17 guns found at his residence, stating Dieter "apparently, under the law, is allowed to have

18 BB guns." (ECF No. 16-9 at 10.) The state court also stated, in response to Dieter's

19 counsel's clarification that the guns were BB guns, that it did not care what they were. (*Id.*

20 at 7.) Given the state court's discontent with the guns, regardless of their nature, Dieter

21 fails to demonstrate that further evidence, explanation, or argument about the guns would

22 have influenced his sentence.

23

24 law authorizes a state court to "consider a wide, largely unlimited variety of information to
ensure that the punishment fits not only the crime, but also the individual defendant."

25 *Martinez v. State*, 961 P.2d 143, 145 (Nev. 1998). Accordingly, based on the breadth of
information the state court was permitted to consider under Nevada law in sentencing

26 Dieter, Dieter fails to demonstrate that counsel acted deficiently in not objecting to the
admission of the photographs at the continued sentencing hearing. *See Strickland*, 466

27 U.S. at 688; *see also Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) ("[T]rial
counsel cannot have been ineffective for failing to raise a meritless objection.").

28

Thus, the Nevada Court of Appeals' determination that Dieter failed to demonstrate deficiency or a reasonable probability of a different outcome had counsel acted differently regarding the guns found during the search constitutes an objectively reasonable application of *Strickland*'s performance and prejudice prongs. *See Strickland*, 466 U.S. at 688, 694. Dieter is not entitled to federal habeas relief for ground 1(b).

### 5.    Ground 1(c)—reasons for plea agreement

#### a.    State court determination

In affirming the state court's dismissal of Dieter's state post-conviction petition, the Nevada Court of Appeals held:

> Dieter claimed counsel was ineffective for failing to explain to the sentencing court the circumstances surrounding the plea agreement. Specifically, he claimed the sentencing court erroneously believed the State had dismissed 18 charges in exchange for his plea. Dieter argued the State never actually charged him with 18 offenses. The district court was informed by the State that Dieter was never charged with 18 offenses. Further, the sentencing court's decision was not based on dismissed offenses. Instead, the sentencing court based its decision on the fact that Dieter lied to the sentencing court at the previous sentencing hearing. Therefore, we conclude Dieter failed to demonstrate a reasonable probability of a different outcome at sentencing had counsel presented further information regarding the plea agreement. Accordingly, we conclude the district court did not err by dismissing this claim without first conducting an evidentiary hearing.

(ECF No. 18-17 at 4.)

#### b.    Analysis

Dieter argues that counsel was deficient for not making the state court aware that all the offenses alleged at the time of his arrest were not charged and would not have been substantiated. (ECF No. 7 at 25.) The Nevada Court of Appeals reasonably determined that Dieter failed to demonstrate prejudice. *Strickland*, 466 U.S. at 694. As the Nevada Court of Appeals reasonably noted, the state court was informed that Dieter was never charged with 18 offenses: at the January 24, 2017, sentencing hearing, the state court asked why the prosecution dismissed 18 felonies in exchange for Dieter's guilty plea, and the prosecutor corrected the state court, providing that Dieter "may have been arrested for 18 felonies, but he wasn't charged." (ECF No. 16-1 at 46.) Further, the prosecution clarified that only the following charges were dismissed under the plea

15

bargain: possession of a controlled substance for sale, possession of methamphetamine, possession of cocaine, possession of several drugs without a prescription, and possession of a stolen vehicle. (*Id.* at 14.) Given that the prosecution corrected and clarified the status of the various offenses and charges stemming from Dieter's arrest and plea agreement, Dieter fails to demonstrate that presentation of similar information by counsel would have resulted in a different sentence.[6]

Moreover, as the Nevada Court of Appeals also reasonably noted, the state court did not adjudge Dieter a habitual criminal based solely on his dismissed offenses. Rather, as was discussed in ground 1(a), the state court adjudged Dieter a habitual criminal because it heard a variety of new information that was not presented at the original sentencing hearing. Consequently, Dieter fails to demonstrate that further presentation of information or evidence by counsel of his dismissed offenses would have resulted in a different sentence.

Therefore, the Nevada Court of Appeals' determination that Dieter failed to demonstrate a reasonable probability of a different outcome at his sentencing hearing had counsel reiterated the circumstances of his plea agreement constitutes an objectively reasonable application of *Strickland*'s prejudice prong. *See Strickland*, 466 U.S. at 694. Dieter is not entitled to federal habeas relief for ground 1(c).

### 6.    Ground 1(d)—objection to misstatements

#### a.    State court determination

In affirming the state court's dismissal of Dieter's state post-conviction petition, the Nevada Court of Appeals held:

> Dieter claimed counsel was ineffective for failing to dispute the district court's statement that he had 10 prior felony convictions. While Dieter had

---

[6]Notably, it appears that the state court was apparently still confused about the status of the offenses and charges from Dieter's arrest following the prosecution's clarification. (*See* ECF Nos. 16-1 at 48 (stating that the prior prosecutor did not "articulate that [Dieter] had 18 felony charges that were all dismissed in exchange for" his guilty plea); 16-9 at 9 (stating that it "finds that in this particular case he was initially charged with 18 felony convictions and many were plea bargained or dismissed to the one charge, which is possession of a firearm by a prohibited person").)

only four prior judgments of convictions that qualified him for habitual treatment, those four prior judgments of conviction contained 10 felony convictions. Therefore, the district court was correct when it stated he had 10 prior felony convictions. Further, as stated above, the sentencing court's decision to sentence Dieter to prison was based on the fact that Dieter lied to the sentencing court at the previous sentencing hearing. Therefore, Dieter failed to demonstrate a reasonable probability of a different outcome had counsel objected to the sentencing court's statement. Accordingly, we conclude the district court did not err by dismissing this claim without first conducting an evidentiary hearing.

(ECF No. 18-17 at 4-5.)

### b. Analysis

Dieter argues that counsel failed to correct the state court when it erroneously stated that he had 10 prior felony convictions within the 4 certified judgments of convictions because when two or more convictions arise out of the same act or transactions, they may only be used as a single conviction for purposes of the habitual criminal statute. (ECF No. 7 at 26 (citing *Rezin v. State*, 596 P.2d 226, 227 (Nev. 1979)).)

As the Nevada Court of Appeals reasonably determined, the state court was correct when it stated that Dieter had 10 prior felony convictions. (*See* ECF No. 20-2 at 4 (Dieter's presentence investigation report showing Dieter had 10 prior felony convictions).) And as the Nevada Court of Appeals also reasonably determined, the prosecution only admitted 4 prior judgments of conviction for the purposes of adjudging Dieter a habitual criminal. (*See* ECF No. 15-27 (exhibit list of Dieter's prior convictions).) The record belies any argument that the state court improperly considered Dieter's 10 felony convictions[7]—rather than just considering the 4 admitted judgments of conviction— when adjudging Dieter a habitual criminal. Indeed, the prosecutor clearly articulated the difference between Dieter's total felony convictions and his number of judgments of convictions at the January 24, 2017, hearing, when she explained that the "four certified copies [of Dieter's convictions that were previously admitted] represent[ed] 10 felony convictions." (ECF No. 16-1 at 13.) Because Dieter's sentence and adjudgment as a

---

[7]Under Nevada law, "where two or more convictions grow out of the same act, transaction or occurrence, and are prosecuted in the same indictment or information, those several convictions may be utilized only as a single 'prior conviction' for purposes of applying the habitual criminal statute." *Rezin v. State*, 596 P.2d 226, 227 (Nev. 1979).

1   habitual criminal were not based on the improper consideration of Dieter's overall felony

2   convictions instead of his judgments of conviction, the Nevada Court of Appeals

3   reasonably determined that Dieter failed to demonstrate a reasonable probability of a

4   different outcome at his sentencing hearing had counsel made a futile objection to the

5   state court's statement that he had 10 prior felony convictions. Thus, because the Nevada

6   Court of Appeals' determination constituted an objectively reasonable application of

7   *Strickland*'s prejudice prong, Dieter is not entitled to federal habeas relief for ground 1(d).

8   **7.      Ground 1(e)—motion for continuance**

9   **a.      State court determination**

10  In affirming the state court's dismissal of Dieter's state post-conviction petition, the

11  Nevada Court of Appeals held:

12  > Dieter claimed counsel was ineffective for failing to move to continue
    > sentencing . . . . Counsel did request to continue the hearing. Further, the
13  > sentencing court acknowledged that Dieter was compliant with his
    > treatment program at sentencing and commended Dieter's progress. The
14  > sentencing court's decision to sentence Dieter to prison rather than to place
    > him on probation and allow him to continue his treatment program was
15  > based on the fact that Dieter lied to the sentencing court at the previous
    > sentencing hearing. Therefore, Dieter failed to demonstrate a reasonable
16  > probability of a different outcome had counsel presented testimony
    > regarding his progress. Accordingly, we conclude the district court did not
17  > err by dismissing this claim without first conducting an evidentiary hearing.

18  (ECF No. 18-17 at 3.)

19  **b.      Analysis**

20  Dieter argues that counsel was deficient for: (1) merely making a "lackluster"

21  motion to continue the January sentencing hearing; and (2) "failing to ensure that

22  sentencing did not proceed forward . . . until after . . . Dieter had an opportunity to

23  complete the [Salvation Army] program." (ECF No. 7 at 21-23.) As the Nevada Court of

24  Appeals reasonably determined, Dieter fails to demonstrate that counsel's representation

25  fell below an objective standard of reasonableness because counsel did request to

26  continue both the January and February hearings. In fact, at the beginning of the

27  continued sentencing hearing on January 24, 2017, Dieter's counsel stated that "if the

28  Court wishe[d] to get information from Salvation Army, . . . [she] would ask to put this

1    [hearing] over briefly." (ECF No. 16-1 at 7.) And then following the January sentencing

2    hearing, Dieter's counsel filed a motion to continue the February 7, 2017 sentencing

3    hearing date—albeit for reasons not related to the Salvation Army program. (ECF No. 16-

4    5.)

5         And even if Dieter's counsel acted deficiently by either not requesting a

6    continuance at the January hearing with more definiteness and vigor or giving better

7    reasons for her request to continue the February hearing—like the need for Dieter to

8    complete the Salvation Army program—the Nevada Court of Appeals reasonably

9    determined that Dieter failed to demonstrate prejudice. *See Strickland*, 466 U.S. at 694.

10   Because the state court declined to continue the January hearing because it apparently

11   determined that it had enough information regarding Dieter's Salvation Army program

12   participation from court services (*see* ECF No. 16-1 at 7-8), Dieter fails to demonstrate

13   that a more enthusiastic request for a continuance would have been fruitful. And because

14   the state court denied the motion to continue the February hearing because "[t]he

15   sentencing hearing ha[d] been concluded and the only matter remaining is the

16   pronouncement of sentence" (ECF No. 16-8 at 3), Dieter fails to demonstrate that moving

17   for a continuance on a different basis—presenting new evidence regarding Dieter's

18   Salvation Army participation or allowing more time for Dieter to complete the Salvation

19   Army program—would have been successful. Moreover, as the Nevada Court of Appeals

20   reasonably determined—and as was discussed in ground 1(a)—the state court did not

21   adjudge Dieter a habitual criminal at the continued sentencing hearing due to his

22   participation in the Salvation Army program. As such, Dieter fails to demonstrate that

23   counsel's actions regarding requesting continuances for purposes related to his

24   participation in the Salvation Army program would have influenced his sentence.

25        Therefore, the Nevada Court of Appeals' determination that Dieter failed to

26   demonstrate deficiency or a reasonable probability of a different outcome had counsel

27   requested continuances differently constitutes an objectively reasonable application of

28

1  *Strickland*'s performance and prejudice prongs. *See Strickland*, 466 U.S. at 688, 694.

2  Dieter is not entitled to federal habeas relief for ground 1(e).

3       **B.**     **Ground 2—judicial misconduct**

4       In ground 2, Dieter alleges that his due process rights under the Fifth and

5  Fourteenth Amendments were violated when the state court engaged in judicial

6  misconduct at the sentencing hearing. (ECF No. 7 at 32–33.) Specifically, Dieter alleges

7  that the state court allowed him to attend the Salvation Army drug treatment program with

8  the understanding that if he successfully completed it, the state court would not sentence

9  him as a habitual criminal. (*Id.*)

10         **1.**     **State court determination**

11       In affirming Scott Dieter's judgment of conviction, the Nevada Court of Appeals

12  held:

13      Dieter claims the district court engaged in unacceptable judicial misconduct at sentencing by implicitly promising he would not be sentenced under the habitual criminal statute if he successfully completed a drug treatment

14      program.

15          [FN1] We reject Dieter's assertion that his case is indistinguishable from *Van Buskirk v. State,* 102 Nev. 241,

16          243, 720 P.2d 1215, 1216 (1986). Unlike in *Van Buskirk,* Dieter's guilty plea was not induced by a promise that he could

17          complete a drug treatment program before being sentenced. Instead, the record demonstrates the parties agreed the State

18          could seek a lesser habitual criminal sentence and Dieter could argue against the enhancement.

19

20      However, the existence of such a promise is plainly belied by the record, which demonstrates the district court merely gave Dieter a chance to

21      mitigate his sentence by participating in a drug treatment program before being sentenced in January 2017. We conclude the district court's decision

22      to provide Dieter with a chance to mitigate his sentence fell well within the court's wide sentencing discretion and did not constitute judicial

23      misconduct. *See Randell v. State,* 109 Nev. 5, 8, 846 P.2d 278, 280 (1993). Therefore, Dieter is not entitled to relief on this claim.

24  (ECF No. 17-2 at 2-3.)

25         **2.**     **Analysis**

26       Federal habeas relief is only available for violations of the federal Constitution,

27  laws, and treaties. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68

28  (1991). Dieter's claim in ground 2 is purely a matter of state sentencing discretion, and,

absent fundamental unfairness, is not cognizable on federal habeas review. *See Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (holding that a trial court's alleged abuse of discretion in applying state sentencing law cannot form the basis for federal habeas relief); *Makal v. Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976) ("So long as the type of punishment is not based upon any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations of state statutes are matters of state concern."); *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.").

As the Nevada Court of Appeals reasonably determined, Dieter's argument that the state court engaged in misconduct by reneging on a promise is belied by the record, and as such, Dieter fails to demonstrate that his sentence implicated fundamental unfairness. Indeed, as the Nevada Court of Appeals reasonably determined, the state court merely gave Dieter a chance to mitigate his sentence by participating in the Salvation Army program before sentencing him. At the end of the October 6, 2016, original sentencing hearing, the state court indicated that it did not "find it to be just and proper to declare Mr. Dieter an habitual offender *at this juncture*." (ECF No. 15-28 at 26 (emphasis added).) The state court then stated that if Dieter "screw[ed]" up the Salvation Army program, he would be sentenced to prison. (*Id.* at 30.) Notably, the state court did not make any promises about what would happen if Dieter did participate in or complete the program. Because the state court did not make a promise to Dieter at the October 6, 2016, original sentencing hearing, Dieter fails to demonstrate that his habitual offender status and prison sentence were fundamental unfair.

Because the Nevada Court of Appeals' denial of relief was not based on an unreasonable determination of the facts and was not contrary to clearly established federal law, Dieter is not entitled to federal habeas relief for ground 2.

///

///

1   **V.   CERTIFICATE OF APPEALABILITY**

2   This is a final order adverse to Dieter. Rule 11 of the Rules Governing Section

3   2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). This

4   Court has *sua sponte* evaluated the claims within the petition for suitability for the

5   issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65

6   (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

7   "has made a substantial showing of the denial of a constitutional right." With respect to

8   claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would

9   find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

10  *v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

11  (1983)).

12  Applying these standards, this Court finds that a certificate of appealability is

13  unwarranted.

14  **VI.   CONCLUSION**

15  It is therefore ordered that the petition for a writ of habeas corpus under 28 U.S.C.

16  § 2254 (ECF No. 7) is denied.

17  It is further ordered that a certificate of appealability is denied.

18  The Clerk of Court is directed to enter judgment accordingly and close this case.

19  DATED THIS 6th Day of February 2023.

20

21

22  _____

23  MIRANDA M. DU
    CHIEF UNITED STATES DISTRICT JUDGE

24

25

26

27

28